Your Honor, may it please the Court, Victor Niebles for the petitioner, Mr. Kanzburg. Your Honor, in this case, what we're looking for is an opportunity to be heard. Mr. Kanzburg was deprived of that opportunity by his former counsel. His former counsel, who was hired to represent him before the Board of Immigration Appeals, failed to do so. He did not file a brief on his behalf, and I don't think that fact is disputed. In fact, the counsel, the former counsel, even states that it was his fault that this brief was not filed. Certainly, there was case law favorable to Mr. Kanzburg challenging the decision of the immigration judge, but Mr. Kanzburg never got the opportunity to do so because, again, his counsel not only failed to file the brief, but also withheld that information from Mr. Kanzburg. In fact, we did not hear or find out about the failure to file the brief until we filed an appeal to the Ninth Circuit and received the administrative record. But didn't Mr. Kellogg provide that information to his new counsel by way of correspondence? No. No, he didn't. Again, he withheld that information from Mr. Kanzburg. Did he have money in the BIA, though, that he had provided that information? What Mr. Kellogg indicated was that Mr. Kanzburg came for his file to his office, and he provided Mr. Kanzburg a partial copy of his file, which very suspiciously excluded the request for extension of time, the brief that indicated that it was his fault that the brief was not filed. In fact, Mr. Kellogg provided him with an alleged brief that was filed that we know was not. My question is, didn't the BIA make a finding that he provided that information to the new counsel by way of correspondence and by the fact that your client took the file from him? The board did mention, and they did mention Mr. Kellogg's letter to the board indicating that he provided the file. But, again, it didn't indicate what the file contained and what it did not contain, which is, I think, very important in this case. And so, again, I think Mr. Kanzburg was deprived of that opportunity to file those briefs. He had a withholding claim, and the Ninth Circuit had just come out with a Korablina case, which favored his facts, and certainly that would have been favorable in any appeal before the BIA. Aren't the facts in Korablina, though, distinctly different from the facts in Mr. Kanzburg's case? Well, Your Honor, we're talking about a person from the Jewish faith who, in Ukraine, was beaten, was harassed, was discriminated, and this Court held that that goes to the level of persecution. Yes, but if you look at the facts in the Korablina case, that activity was directed at that person, Korablina, because of her Jewish faith. But in Mr. Kanzburg's case, it was he simply refused to take an oath, a military oath. Yes, Your Honor, but I think what's important here is why he decided not to take that allegiance, that oath. It was because of his previous treatment because of his Jewish faith. It was related to his faith. They called him kike throughout all of his youth. They discriminated. They beat him. And so because of his experience of his Jewish faith, that made him say, I'm not going to take the oath to a government that treats me and treats people of my faith in this fashion. So it's directly linked to his faith. Is there any evidence that the officers that beat him knew that he was Jewish at the time they were beating him? Your Honor, I believe the facts indicate that they even called him the kike. Where is that in the record? Your Honor, I don't have the record with me, but I can certainly pull it up on rebuttal. That seems like that was critical. I understood that was part of the BIA's decision was, and the ALJ's decision was, that there was no evidence linking. He may have felt that he was persecuted because he was Jewish when he was a boy. He may have felt that his family and his mother testified that she felt persecuted. But there didn't seem to be any evidence here that indicated that any of the official action taken against him was taken on account of his religious status. Your Honor, and I can see that point. My response would be that there is case law in the Ninth Circuit that indicates that we don't necessarily need to know the motivations of the persecutor. And in this case, Mr. Kansberg... Well, if that's true, that would make any incident of police brutality in any country grounds for asylum in this country, irrespective of whether it was for personal reasons or a vendetta or because somebody was drunk or whatever it was, that would get you asylum. I don't think that's the rule. Well, Your Honor, again, in this case, the facts did indicate that it was because he was being called this name, he was, again... No, that's why he said he refused to take the oath. Yes. I'm asking you about the motivation of the officers that beat him. And that seems to me to be a critical fact, and if you can provide that on rebuttal, that would be useful. I can certainly look at it, Your Honor. What I can tell you is that we don't know what the motivation was by the officers. I don't know we can ever find out exactly what they were thinking when they were beating him. Okay. If they beat him because they thought that he was being disrespectful to them, does that entitle him to asylum under our law? Your Honor, I think beating, in any sense, would qualify somebody for asylum. If the officers were drunk and beat him because they were drunk, would that entitle him to asylum? Your Honor, again, it's the officers must be controlled by the country, and if the country is unable or unwilling to control actors... In order to get asylum in this country, you have to show that you've been persecuted on account of a protected ground. What's the protected ground if an officer is beating you because he's drunk? Your Honor, in this case, there's also past persecution. The established of past persecution and beating... What past persecution? The severe beating, in this case, from Mr. Kansberg. Right. And this is all circular, counsel. The beating has to be motivated by on account of a protected ground. You haven't been able to provide the evidence that it was on account of a protected ground. Your Honor, Mr. Kansberg even states, after he was forced to do the oath and he pledged the allegiance, that he was given all the horrible jobs in the army and that he was, you know, again, continued with that discrimination because of who he was, because of his faith. So, again, I think there's circumstantial evidence. I think, from my point of view, there's direct evidence that it was because of his Jewish faith. And we have to not forget here that Mr. Kansberg came to the United States under the Landberg Amendment, indicating that the Jewish people in Ukraine were being persecuted, and he came in as a refugee. And, again, our country designated him as a refugee because of the treatment of the Jewish people in Ukraine, Your Honor. And so, again, Your Honor, I think all we're asking here is an opportunity for the board to hear our arguments, to be able to file a full brief. Counsel, can I go back to the time delay here? What is his explanation for the seven-month delay between obtaining the files from his former counsel and then waiting seven months before he brought his petition to reopen to the board? Sure, Your Honor. And, again, Mr. Kansberg never received – he never knew that his counsel didn't file the brief. That's not the question. The question is, if he wanted to further challenge, and he ultimately decided that he did, he waited seven months from the time he had the file, and the regulation says you get 90 days. Your Honor, I can tell you I had that file, and that file did not have any information pertaining to Mr. Kellogg's failure to file a brief. In fact, that first petition for review, we based it on this alleged brief that he filed, which we know he did not. So I looked at that file. We tried to request a FOIA or a copy of the file. That would have taken two years. So once we got the certified record, and to our surprise, we found out that Mr. Kellogg did not file the brief, we knew what had happened, we knew the fraud, we knew the ineffective assistance of counsel, and we diligently filed a motion to reopen to the board. And where in the record do I find the date on which the discovery occurred? Your Honor, I will look for it, and I will raise it on rebuttal.  So I'll reserve my time. You're going to reserve the rest of your time. Yes. Thank you. Very well. May it please the Court. My name is Edward Wiggers. I represent the respondent in this matter. And I would like to begin by addressing Petitioner's contention that he needs an opportunity to be heard. He actually had one in this case. For while the board denied his motion to accept an untimely filed brief, it did not dismiss his appeal, for he raised the issues he wanted to raise in his notice of appeal. The board, therefore, had his contentions as well as the record of the immigration proceedings. Counsel, why did the board turn this down? Why did they refuse to file the brief? Counsel came forward and said, I've made a mistake. Somebody mis-catalogued the date. It's my fault. Please don't hold my client accountable. I realize I'm now one week or two weeks late. And the BIA said, no, you're late. We're going to have to hurry up and decide this thing. And they don't decide it for another year and a half. And now all of a sudden we've got matter-of-Lazada claims and we've got this whole sideshow going on here that might have been avoided if your client had said, well, that was a dumb thing to do, and maybe you ought to be penalized in some way, but let's just take the brief and decide the thing on the merits. It probably would have made everything a lot simpler, Your Honor, had they accepted the brief. However, this board's standards for accepting untimely filed briefs requires a showing of exceptional circumstances, and a paralegal's failure to correctly calendar a due date is not exceptional. The safety net in these situations is the fact that the failure to file a brief does not necessarily cut off review, especially when the notice of appeal contains the issues the alien wants addressed, as it does in this case. It's not as fully developed as it would have been with the brief. However, he had his bite at the apple. Well, even if we do get to the merits, doesn't he have a problem showing prejudice? He certainly does, Your Honor. And as far as before prejudice on the due diligence point, I would like to note that in the record, and with the September 25, 2002 letter that his former counsel sent to Mr. Gray, his then-attorney at that time, actually, it's the September 25, 2002 letter that his former counsel sent to Petitioner, in which he enclosed a copy of the board's decision. Also in the record is the copy of the board's decision that was enclosed, as well as a copy of the board's order that denied the motion to accept the untimely filed brief. So it appears he was actually on notice. Well, but doesn't Mr. Kellogg have a credibility problem, since he already deceived his client to start with by not telling him that he had missed a deadline? He potentially has a credibility problem, Your Honor, in that regard. However, So you're willing to accept his representation that he, in fact, informed his client at some point? It's not so much Mr. Kellogg's representation as the fact that the board's decision that denied the motion to accept the untimely filed brief is in the record, accompanying a letter that Mr. Kellogg sent to Petitioner. I understand, but that doesn't overcome the credibility problem Mr. Kellogg has, does it? Your Honor, I don't believe that Mr. Kellogg's interest in possibly protecting his legal practice compared with Petitioner's obvious interest in presenting his ineffective assistance of counsel claim has any interaction, really. The fact is that we have evidence in the record that he received the necessary notice to know that his brief was not timely filed with the board. And we also, with the review of factual matters from a board's decision, the record must compel a contrary conclusion to that which the board reached. And it certainly doesn't do so in this case. And regarding his claims for withholding of removal, the record establishes that in the Ukraine, at this point in time, the Jewish community is very strong. There are actually mayors elected in two cities, including the major city of Odessa. In Kiev, they have a 100,000-member community with universities, schools, and full opportunities. Petitioner, based on the record evidence available, cannot establish that it's more likely than not that he will be persecuted should he return to the Ukraine, and therefore cannot establish that he's eligible for withholding of removal. I'd just like to note for the Court that we are not making our jurisdictional argument that was presented in our brief. Unless there are any further questions, that concludes our presentation. Thank you, Counsel. Your Honor, to respond to some of the questions that were asked by the panel, number one as to the diligence of him filing a motion to reopen, in the administrative record, page 34, we have Mr. Kansberg's declaration, which indicates that, Honor, about April of 2003, he discovered for the first time that Attorney Kellogg did not, in fact, file the appeal in question in a timely manner. This was April of 2003. The motion to reopen to the Board was filed a month later on May 6, 2003. So, again, once that information was revealed and we discovered this mistake by Attorney Kellogg, we immediately filed the motion to reopen. We were diligent. We did not wait. We immediately filed. But, of course, we could not have filed beforehand because we had no clue. What was it that tipped you off in April of 2003 that Kellogg had not filed the brief? The administrative record of this Court, Your Honor. We finally had a complete copy of the file, and we saw all the notices from the Board and Mr. Kellogg's motions requesting, first of all, an extension of time. And after that extension of time was granted, he still didn't file the brief. And then he filed another motion, a motion to file a late brief in which he indicates that it was his fault, but the Board, again, denied that motion. So we were now privy to that information, and we at that point for the first time discovered this ineffective assistance of counsel against Mr. Kanzberg. And that's when we acted. We immediately acted within 30 days to file that motion to reopen with the Board of Immigration Appeals. What's your response to the argument that the September 25, 2002 letter included the decision that indicated that the brief had been rejected as untimely? Your Honor, again, I can tell you that whatever documents Mr. Kanzberg received from Mr. Kellogg, they were brought to my office, and I reviewed them, and there was nothing there pertaining to the denial, why the denial happened, and more importantly, the failure to file the brief. Mr. Kellogg could have – he gave them documents. Again, he gave us an alleged brief that was allegedly filed. He gave them some documents, but not a complete copy of the file. The Board is correct in that – and then they say that Mr. Kellogg gave them some documents. They are incorrect in that they don't indicate exactly what was in that file and what was missing. And I think in that sense, the Board did not have all the facts, and Mr. Kellogg, again, did not reveal the entire facts to the Board as to exactly what was given to Mr. Kanzberg and what was not. If Mr. Kanzberg was angry, he probably would have been furious. Let me just make sure I've got the right attachment. Is the attachment to the September 25, 2002 letter, the September 10, 2002 order, the per curiam order of the Board, which is at AR 101? Yes, Your Honor. Now, we never received that information. That letter that was sent to the Board, he never served us. No, no, no. This is the letter to Mr. Kanzberg. Exactly. And that letter, again – It references the – I think, doesn't it? It just references a denial, but it doesn't reference why it was denied. Right. That's what I'm asking you. I mean, is this the order that was included as the attachment? Yes. I mean, that's what we got, and that's what we used to – Because I agree with you. It doesn't say anything about the denial of the late-filed brief. And so my first petition for review was based on this denial that said nothing. So my understanding was that it was denied on the merits. But later on, when we received the administrative record, we discovered that there was no brief filed. And so, hence, the immigration judge's ruling went unchallenged. Okay. Anything further? No, Your Honor. Very well. Thank you both. The case just argued is submitted.
judges: Burgess, Tallman, Bybee